Submitted August 31, reversed December 14, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BARBARA DEANNE TRIVITT,
*Defendant-Appellant.*

Coos County Circuit Court
09CR0767; A143932

268 P3d 765

Peter Gartlan, Chief Defender, and Kali Montague, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Rosenblum, Senior Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant was found in contempt of court, ORS 33.015(2)(b), for violating a restraining order under the Family Abuse Prevention Act (FAPA), ORS 107.700 to 107.735. She now appeals the resulting judgment, assigning error to the denial of her motion for a judgment of acquittal on the ground that the evidence was legally insufficient to show that she engaged in conduct prohibited by the FAPA restraining order at issue.[1] We conclude that defendant's conduct did not constitute "interfering" with the protected person and was not otherwise prohibited by the FAPA order. Accordingly, we reverse.

The pertinent facts are few and undisputed. JG, defendant's former boyfriend, obtained a FAPA restraining order that prohibited defendant from, among other things, entering or attempting to enter JG's residence or "intimidating, molesting, interfering with or menacing [JG], or attempting to intimidate, molest, interfere with or menace [JG] directly or through third parties." While the order was in effect, defendant went to the property of Thompson, JG's then-current girlfriend, and posted a small sign on a wooden post at the end of Thompson's driveway. The sign stated, "[JG] has Genital Herpes[.] He won't tell you unless he has an outbreak[.] Ask his ex-wife[, RC;] she lives just up the street." Shortly thereafter, JG's relationship with Thompson ended.

During closing arguments at trial, the state argued that defendant's conduct constituted an attempt to interfere with or menace JG through a third party, ORS 107.718(1)(e), and thus constituted a violation of the FAPA order. Defendant's trial counsel responded that, although defendant's conduct may have had the effect of interfering with JG's relationship with Thompson, "it just doesn't fit within any of the

---

[1] At trial, although defendant did not formally move for a judgment of acquittal, in her closing arguments, defendant argued that there was legally insufficient evidence that her conduct was a violation of the FAPA order. That argument is sufficient to preserve the issue before us on appeal. *See State v. Gonzalez*, 188 Or App 430, 431, 71 P3d 573 (2003) (concluding that the defendant's closing argument that the state had not adduced legally sufficient evidence to establish the required culpable mental state "is the equivalent of a motion for judgment of acquittal").

restrictions of the [r]estraining [o]rder." According to defendant's trial counsel, because the FAPA order did not proscribe defendant's conduct and defendant had no intent to communicate with JG, the state failed to prove that defendant willfully violated the restraining order.

The trial court ultimately agreed with the state about defendant's conduct:

> "What you did was violate a [r]estraining [o]rder beyond any doubt. You didn't walk into a public grocery store and have, by happenstance, contact with [Thompson], who you might or might not know. You went to a location where you knew she was or would be, for the specific purpose of sending her a message about [JG]. That clearly comes within the prohibition of the [r]estraining [o]rder that prevents you from interfering with him. You did it purposefully. And frankly, to be mean-spirited and small."

Accordingly, the trial court found defendant in contempt for violating the FAPA order because defendant willfully disobeyed the court's order by interfering with or attempting to interfere with JG directly or through a third party.

On appeal, defendant maintains that her conduct did not violate the FAPA order because, under the order as written, defendant was not proscribed from communicating with Thompson or going to Thompson's residence. Further, defendant contends that, in any event, ORS 107.718(1)(f) does not authorize a court to prohibit a respondent from having contact with a third party, other than a petitioner's minor child. Finally, defendant argues that her conduct is not proscribed in the order nor contemplated by the statutory scheme because such a limitation would violate her fundamental rights to free speech and association under Article I, section 8, of the Oregon Constitution and the First Amendment to the United States Constitution.

The state renews the argument it made before the trial court, that defendant violated the FAPA order because the content of her communication with Thompson constituted an attempt to "interfere with" JG within the meaning of ORS 107.718(1)(e). According to the state,

"it is apparent that defendant was angry with [JG] and wanted to retaliate against him through third parties, particularly those with whom he has a romantic relationship. That is the kind of behavior that a restraining order is designed to address and prevent. The information that defendant was communicating is precisely the kind of information that will or is likely to have an effect of interfering with [JG] and his relationships with others."

Additionally, the state responds to defendant's constitutional argument by contending that the order prohibits defendant's speech only to the extent necessary to protect JG and therefore does not suffer from overbreadth. Further, the state contends that, in any event, because defendant did not appeal the issuance of the FAPA order, this court should not consider her constitutional argument.

We agree with the state that, were defendant arguing that the FAPA order itself was unconstitutional and thus that she cannot be prosecuted for violating it, that argument would not be properly before us on appeal. *See State v. Ryan*, 350 Or 670, 261 P3d 1189 (2011). However, we understand defendant to be making a qualitatively different argument: that the FAPA order did not prohibit the conduct at issue and that the pertinent provision of the order is not susceptible to the broad interpretation that the trial court gave it here because such an interpretation would infringe on constitutionally protected conduct.

We review the denial of a motion for judgment of acquittal "to determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt." *State v. Thomas*, 229 Or App 453, 456, 211 P3d 979, *rev den*, 347 Or 349 (2009). Here, the facts are undisputed, and the parties' contentions center on whether the trial court correctly concluded that defendant's conduct constitutes "interfering" within the meaning of the FAPA statute, ORS 107.718(1)(e), thus raising a question of statutory construction. *See id*. When construing a statute, we examine its text in context and in light of any pertinent legislative history in order to determine the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009);

*PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993).

We begin with the text of the FAPA provision at issue, ORS 107.718, which provides, in pertinent part:

"(1)     * * * Upon a showing that the petitioner has been the victim of abuse committed by the respondent within 180 days preceding the filing of the petition, that there is an imminent danger of further abuse to the petitioner and that the respondent represents a credible threat to the physical safety of the petitioner or the petitioner's child, the court shall, if requested by the petitioner, order:

"* * * * *

"(e)   That the respondent be restrained from intimidating, molesting, *interfering with* or menacing the petitioner, or attempting to intimidate, molest, interfere with, or menace the petitioner;

"(f)   That the respondent be restrained from intimidating, molesting, interfering with or menacing any children in the custody of the petitioner, or attempting to intimidate, molest, interfere with or menace any children in the custody of the petitioner[.]"

(Emphasis added.) ORS 107.705(4) provides that "interfere" as used in ORS 107.718 means "to interpose in a manner that would reasonably be expected to hinder or impede a person in the petitioner's situation."

In 1995, the Oregon legislature amended ORS 107.705 to include the definition of "interfere," among other terms, and defined it as "to interpose in a way that hinders or impedes." Or Laws 1995, ch 637, § 2. The 1997 legislature then modified the definition of "interfere" to reflect its current definition. Or Laws 1997, ch 863, § 8. Before those amendments, this court had decided *State ex rel Emery v. Andisha*, 105 Or App 473, 805 P2d 718 (1991), in which we concluded that "interfere" means "to interpose in a way that hinders or impedes" or *"to take part in the concern of others."* *Id*. at 476 (citing *Webster's Ninth New Collegiate Dictionary* 631 (1990)) (emphasis added). Thus, the *Andisha* court defined "interfere" much more broadly than the current statutory definition. The legislature therefore, in enacting the

definition of "interfere" now found in ORS 107.705(4), chose a narrower definition than we had previously ascribed to the term. That is, the legislature did *not* include in its definition of "interfere" the notion of "tak[ing] part in the concern of others." Rather, it limited its definition to the "hinder or impede" portions of the definition that we had set forth in *Andisha*. Because we presume that the legislature is aware of our case law interpreting statutes, we further presume that the legislature intended a narrower definition than we had given the term in *Andisha*. *See Mastriano v. Board of Parole*, 342 Or 684, 693, 159 P3d 1151 (2007) ("[W]e generally presume that the legislature enacts statutes in light of existing judicial decisions that have a bearing on those statutes.").

The question then becomes whether "interfere," as narrowly defined in ORS 107.705(4) can be interpreted to encompass conduct such as defendant's conduct here. As noted, "interfere" is "to interpose in a manner that would reasonably be expected to hinder or impede a person in the petitioner's situation." The terms "interpose," "hinder," and "impede," however, are not defined by statute. When a term is not statutorily defined, we presume that the legislature intended terms to have its plain, natural, and ordinary meaning. *PGE*, 317 Or at 611. Common definitions of "interpose" are "to place between or in an intermediate position" or "to put (oneself) between." *Webster's Third New Int'l Dictionary* 1182 (unabridged ed 2002). "Hinder" is defined as "to do harm to: impair, damage" or "to make slow or difficult the course or progress of." *Id.* at 1070. And finally, "impede" is commonly defined as "to interfere with or get in the way of the progress of: hold up: block." *Id.* at 1132.

Although the ordinary meaning of those terms suggests that the legislature intended "interfere" to encompass a more physical interference than the conduct at issue here, we cannot say that it is wholly implausible that the statutory definition could not also suggest nonphysical interference. Nonetheless, the plain meanings of "interpose," "hinder," and "impede" collectively suggest a direct interference with the person protected under a FAPA order, rather than proscribing the type of conduct at issue here, which is more akin to the legislatively rejected understanding of "interfere" as "tak[ing] part in the concern of others." Moreover, construing

"interfere" so broadly as to preclude a person from simply revealing personal information about another person to a third party would potentially run afoul of the avoidance canon, which holds that, "when one plausible construction of a statute is constitutional and another plausible construction of a statute is unconstitutional, courts will assume that the legislature intended the constitutional meaning." *State v. Kitzman*, 323 Or 589, 602, 920 P2d 134 (1996).

Moreover, a more limited interpretation of "interfere" is supported by the context of FAPA. The purpose of a FAPA restraining order is to protect a victim of domestic abuse from further abuse. Thus, when a court orders the abuser to "be restrained from intimidating, molesting, interfering with or menacing" the protected person within the context of FAPA, ORS 107.718(1)(e), "interfering" within the context of the statute simply could not encompass defendant's conduct, which did not constitute more than offensive behavior.[2]

Accordingly, we hold that there was insufficient evidence to show that defendant interfered with or attempted to interfere with JG within the meaning of the FAPA order.

Reversed.

---

[2] The legislative history further supports our understanding of the types of behavior that the legislature intended to proscribe in ORS 107.718. During a House Judiciary Committee work session, legal counsel submitted amendments adopted in subcommittee, in which a member of the Oregon Coalition Against Domestic Violence proposed that the term "bothering" be omitted from the list of terms under ORS 107.718. Exhibit A, House Committee on Judiciary, SB 356A, July 9, 1981. Counsel distinguished the term "bothering" from "molesting" or "interfering." Tape Recording, House Committee on Judiciary, SB 356, July 9, 1981, Tape 540, Side A (statement of Linda Zuckerman). Discussion during that work session indicated that the concern was that "bothering" could be misconstrued by the public. Ultimately, the bill was moved to the floor with a "do pass" recommendation as amended with "bothering" omitted. Minutes, House Committee on Judiciary, July 9, 1981, 426. *See, e.g., Webster's* at 285 (defining "bothering" as "to put in a state of agitation" or "to annoy, anger, or upset, especially by petty provocation").