Argued and submitted February 18, 2016, reversed September 7, 2017

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JOSEPH SHANE BALERO,
*Defendant-Appellant.*

Jackson County Circuit Court
14CN00908; A157811

402 P3d 739

Laura E. Coffin, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before DeVore, Presiding Judge, and Powers, Judge, and Duncan, Judge pro tempore.*

---

* Powers, J., *vice* Flynn, J. pro tempore.

### DUNCAN, J., pro tempore

Defendant appeals the trial court's judgment finding him in contempt of court for violating a restraining order issued under the Family Abuse Prevention Act (FAPA), ORS 107.700 to 107.735. On appeal, defendant asserts that the state failed to present legally sufficient evidence that he "interfered" or attempted to "interfere" with the person protected by the FAPA order. We agree with defendant and, therefore, we reverse the trial court's judgment.

When a defendant challenges the legal sufficiency of the evidence supporting a finding of contempt, we view the evidence in the light most favorable to the state to determine whether a rational trier of fact could find the elements of contempt beyond a reasonable doubt. *State v. Trivitt*, 247 Or App 199, 203, 268 P3d 765 (2011). The relevant facts, which we state in accordance with that standard, are few and undisputed.

Defendant's then-current wife obtained a FAPA order against defendant pursuant to ORS 107.718. Under that statute, a petitioner may obtain a restraining order against a respondent if the petitioner shows that "the petitioner has been the victim of abuse committed by the respondent within 180 days preceding the filing of the petition, that there is an imminent danger of further abuse to the petitioner and that the respondent represents a credible threat to the physical safety of the petitioner." ORS 107.718(1). For the purposes of FAPA, "abuse" is defined by ORS 107.705(1), which provides:

> "'Abuse' means the occurrence of one or more of the following acts between family or household members:
>
> "(a)    Attempting to cause or intentionally, knowingly or recklessly causing bodily injury.
>
> "(b)    Intentionally, knowingly, or recklessly placing another in fear of imminent bodily injury.
>
> "(c)    Causing another to engage in involuntary sexual relations by force or threat of force."

A FAPA order may restrain the respondent "from intimidating, molesting, interfering with or menacing the petitioner,

or attempting to intimidate, molest, interfere with or menace the petitioner[.]" ORS 107.718(1)(e). "The purpose of a FAPA restraining order is to protect a victim of domestic abuse from further abuse." *Trivitt*, 247 Or App at 206; *see also State ex rel Halthaway v. Hart*, 300 Or 231, 236, 708 P2d 1137 (1985) ("[T]he essence of [FAPA] is to prevent acts of family violence through restraining orders.").

The FAPA order at issue in this case restrained defendant from "intimidating, molesting, interfering with or menacing Petitioner, or attempting to intimidate, molest, interfere with or menace Petitioner directly or through third parties." (Boldface omitted.) While the FAPA order was in effect, defendant sent an email to petitioner's employer. In the email, defendant asserted that petitioner had committed theft and fraud, and he expressed concern that she might use her position to steal personal information from other employees.[1]

Based on the email, the state charged defendant with contempt under ORS 33.015(2).[2] At the subsequent court trial, the sole issue was whether defendant "interfered" with petitioner, in violation of the FAPA order, by sending the email to her employer.

The state argued that the email constituted "interference" for the purposes of FAPA. The state contended that, if defendant had a genuine concern about petitioner's future conduct, he should have reported that to the police, and that by going "straight to her employer" he interfered with her "ability to stay gainfully employed," and that "part of

---

[1] The full text of the email is as follows:

"Dear [Employer],

"I would like to inform you of a [*sic*] employee that works [in one of your departments]. She has admitted to theft and fraudulent [illegible] from her father. I am worried for the employee [*sic*] that work for [Employer] because she has access to all there [*sic*] personal information. I will send a [illegible] feel obligated to inform you of this employee.

"Thank you for your time

"Concerned Citizen"

[2] ORS 33.015(2) provides, in part, that "'Contempt of court' means the following acts, done willfully * * * (b) Disobedience of, resistance to or obstruction of the court's authority, process, orders or judgments."

why the protection orders exist" is to protect against such interference.

Defendant did not dispute that he had sent the email, but he argued that his conduct was analogous to that at issue in *Trivitt*, which we held did not constitute "interference" for the purposes of FAPA. 247 Or App at 206. In *Trivitt*, the trial court found the defendant in contempt for violating a FAPA order, which prohibited her from interfering with the petitioner, her former boyfriend. The trial court's finding was based on the defendant's posting of a sign in the front yard of the petitioner's current girlfriend stating that the petitioner had genital herpes. The defendant appealed and we reversed. For reasons discussed in greater detail below, 287 Or App at 682-84, we concluded that, although the defendant's conduct was offensive, it was not the type of direct interference with a person that FAPA prohibits. 247 Or App at 206.

In response, the state argued that *Trivitt* was not controlling because it did not rule out the possibility of "non-physical interference." The state also argued that *Trivitt* was distinguishable because, unlike defendant's email, the conduct at issue in *Trivitt* did not involve the petitioner's employment.

After the parties' arguments, the trial court concluded that defendant's email constituted "interference" for the purposes of FAPA and found defendant in contempt of court. The trial court explained:

"The question before this Court is whether or not [the email] is an interference and is in direct conflict with the restraining order.

"I do find that [defendant's] actions were for the * * * following reasons: the definition of interfere is to interpose in a manner that would reasonably be expected to hinder or impede a person in the petitioner's situation. This is clearly a situation where this was a non-physical interference."

On appeal, the parties renew the arguments they made in the trial court. Consequently, our task, as framed by the parties' arguments, is to interpret the term "interference" for the purposes of FAPA by applying the statutory

interpretation method established in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). We undertook that specific task in *Trivitt*, analyzing the text, context, and relevant legislative history of the term "interference" as used in FAPA. Because it is on point, we recount the *Trivitt* analysis here.

As mentioned, in *Trivitt*, the defendant was found in contempt for violating a FAPA order by posting a sign in the front yard of the petitioner's current girlfriend stating that the petitioner had genital herpes. On appeal, the issue was whether the defendant's actions constituted "interference" for the purposes of FAPA.

To resolve the issue, we turned first to the legislative history of the term. We noted that in *State ex rel Emery v. Andisha*, 105 Or App 473, 805 P2d 718 (1991), which was decided before the statutory definition of interfere was enacted in ORS 107.705, we defined "interfere" as "'to interpose in a way that hinders or impedes' or *'to take part in the concern of others'*." *Trivitt*, 247 Or App at 204 (quoting *Andisha*, 105 Or App at 476) (emphasis in *Trivitt*). We found it significant that, in 1995, when the legislature did enact a statutory definition for "interfere," Or Laws 1995, ch 637, § 2, it defined the term as "to interpose in a way that hinders or impedes." *Id.* at 204-05. "That is," we explained, "the legislature did *not* include in its definition of 'interfere' the notion of 'tak[ing] part in the concern of others.' Rather, it limited its definition to the 'hinder or impede' portions of the definition that we had set forth in *Andisha*." *Id.* at 205 (emphasis and brackets in original). We further explained that, because "we presume that the legislature is aware of our case law interpreting statutes," the legislative history of the definition demonstrated that "the legislature intended a narrower definition than we had given the term in *Andisha*." *Id.*

Then, to determine whether the narrower statutory definition—"to interpose in a way that hinders or impedes"—encompassed conduct like the defendant's, we reviewed the dictionary definitions of "interpose," "hinder," and "impede." *See PGE*, 317 Or at 611 (when a term is not statutorily

defined, we presume that the legislature intended the term to have its plain, natural, and ordinary meaning). We noted:

> "Common definitions of 'interpose' are 'to place between or in an intermediate position' or 'to put (oneself) between.' *Webster's Third New Int'l Dictionary* 1182 (unabridged ed 2002). 'Hinder' is defined as 'to do harm to: impair, damage' or 'to make slow or difficult the course or progress of.' *Id.* at 1070. And finally, 'impede' is commonly defined as 'to interfere with or get in the way of the progress of: hold up: block.' *Id.* at 1132."

*Trivitt*, 247 Or App at 205. We stated "we cannot say that it is wholly implausible that the statutory definition could not also suggest nonphysical interference[,]" but reasoned that the plain meanings of "interpose," "hinder," and "impede" suggest "a direct interference with the person protected under a FAPA order." *Id.* We explained that the defendant's conduct, placing a sign that communicated personal information about the petitioner on a third party's lawn, was "more akin to the legislatively rejected understanding of 'interfere' as 'tak[ing] part in the concern of others.'" *Id.* (brackets in original).

We also explained that construing "interfere" to include

> "simply revealing personal information about another person to a third party would potentially run afoul of the avoidance cannon, which holds that, when one plausible construction of a statute is constitutional and another plausible construction of a statute is unconstitutional, courts will assume that the legislature intended the constitutional meaning."

*Id.* at 206 (internal quotation marks omitted).

Finally, we noted that our interpretation of "interfere" was consistent with the purpose of FAPA, which was "to protect a victim of domestic abuse from further abuse[,]" rather than to protect people from conduct, like the defendant's, "which did not constitute more than offensive behavior." *Id.*

Our analysis in *Trivitt* produces the same result here. Under *Trivitt*, "interfere" does not include "tak[ing]

part in the concern of others," even if it constitutes "offensive behavior." Here, defendant did not have any direct physical or verbal contact with petitioner. As in *Trivitt*, defendant communicated negative personal information about petitioner to a third party in an attempt to affect petitioner's relationship with that third party. And, as in *Trivitt*, that conduct is more akin to "tak[ing] part in the concern of others" than "direct interference."

The state argues that defendant's conduct is distinguishable from the conduct at issue in *Trivitt*. Specifically, the state asserts that defendant's email constituted "*direct* interference with [petitioner's] employment situation" because defendant "'interposed' himself between [petitioner] and her employer[,]" and because the email "would reasonably be expected 'to do harm to' [petitioner] by inducing the city to take action against her." (Citing *Webster's* at 1182) ("interpose" means "to place between or in an intermediate position" or "to put (oneself) between"); quoting *Webster's* at 1070 ("hinder" can mean "to do harm to: impair, damage"); (emphasis in state's brief). The state's argument is unavailing for two reasons.

First, the state fails to explain *how* defendant's conduct was qualitatively different from the conduct at issue in *Trivitt*. In *Trivitt*, the defendant's conduct was no less "direct" than defendant's conduct here. By placing a sign on the petitioner's girlfriend's lawn, the defendant in *Trivitt* also "interposed" herself "between" the petitioner and a third party, his girlfriend. Similarly, the message on the sign in *Trivitt* could also "reasonably be expected 'to do harm to'" the petitioner, specifically, to his romantic relationship and reputation.[3]

Second, without a narrower understanding of the term "harm," the state's proposed interpretation would "potentially run afoul of the avoidance canon" in the same way as in *Trivitt*. Under the state's proposed interpretation, a person could "interfere" with a petitioner in violation of a FAPA order if, acting in good faith, he or she told the police information about a petitioner that would lead the police to

---

[3] And, indeed, shortly after the sign was posted, the petitioner's relationship with his girlfriend ended. *Trivitt*, 247 Or App at 201.

believe the petitioner committed a crime. Similarly, a person could "interfere" with a petitioner if he or she told the petitioner's employer that the petitioner, a food-service worker, had a communicable disease, resulting in the petitioner being suspended or fired.

Accordingly, we hold that there was insufficient evidence to show that defendant interfered or attempted to interfere with petitioner within the meaning of the FAPA order. As a result, the trial court erred in finding defendant in contempt of court.

Reversed.