TOOKEY, P. J.
*767 Defendant was found in contempt of court, ORS 33.015, for violating a restraining order under the Family Abuse Prevention Act (FAPA), ORS 107.700 to 107.135. Defendant now appeals the resulting judgment, assigning error to the denial of her motion for judgment of acquittal on Count 2, arguing that the evidence was legally insufficient to prove that she willfully attempted to contact the petitioner through a third party.[1] We *514 conclude that defendant's conduct constituted attempted "contact" with the petitioner through a third party and that the state presented sufficient evidence from which a rational factfinder could conclude that she willfully attempted to contact the petitioner through a third party. Accordingly, we affirm.
Because defendant argues that there was insufficient evidence to find her in contempt, "we state the facts in the light most favorable to the state." State v. Keller , 246 Or. App. 105, 107, 265 P.3d 48 (2011). The petitioner successfully petitioned for a FAPA restraining order against defendant that prohibited her from "[c]ontacting, or attempting to contact, [the] petitioner in person directly or through third parties."
The petitioner was riding the bus to work. When defendant boarded the bus and saw the petitioner, she motioned for the bus driver to speak with her outside of the bus. Defendant and the bus driver talked outside for about one minute. When their conversation ended, the bus driver approached the petitioner, "[a]t the request of [defendant]," and told him that "[defendant] wants you to get off the bus." The petitioner responded, "I'm already on the bus. I'm on my way to work." The bus driver returned to defendant and said, "Well, I can't really make [the petitioner] leave." Defendant remained outside, and the bus driver sat back down and drove off with the petitioner on the bus.
*768 The petitioner contacted the police to report a violation of the FAPA order, and the state charged defendant with two counts of contempt of court. As relevant here, Count 2 alleged that defendant "willfully disobey[ed] an order of the Jackson County Circuit Court by *** attempting third party contact with [the petitioner]." At the contempt hearing, defendant acknowledged that her "actions *** indicate knowledge that if she sees the protected party she's not supposed to have contact with him" or "contact through a third party." Defendant argued, however, that the court could not find her in contempt for willfully attempting third party contact with the petitioner because defendant was "not sending a message to [the petitioner], [she was] sending a message to the bus driver not trying to get [the petitioner] a message, trying to get him off the bus so that she [could] get on." The trial court found defendant in contempt on Count 2 for attempting third party contact.[2]
On appeal, defendant reprises her argument that "[t]he trial court erred in failing to enter a judgment of acquittal on Count 2" because "[t]he state failed to present evidence that defendant intended the bus driver to contact [the] petitioner for her and, thus, it failed to meet its burden of proving that defendant 'willfully' violated the restraining order."[3] The state argues that it "introduced sufficient evidence to allow a rational juror to reasonably infer that defendant willfully contacted [the] petitioner through a third party, in violation of the restraining order."
"We review the denial of a motion for judgment of acquittal to determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt." State v. Trivitt , 247 Or. App. 199, 203, 268 P.3d 765 (2011) (internal quotation marks and citation omitted). ORS 33.015(2)(b) defines "contempt of court"
*769 to include "[d]isobedience of, resistance to or obstruction of the court's authority, process, orders, or judgments" when "done willfully." We have stated that, "[t]o prove contempt, the state *515 must establish the existence of a valid court order, the defendant's knowledge of that order, and the defendant's willful noncompliance with that order." State v. Beleke , 287 Or. App. 417, 421, 403 P.3d 481, rev. den. , 362 Or. 208, 407 P.3d 814 (2017). Here, defendant does not dispute that there was a valid FAPA order or assert that she did not know about the order. Nor does defendant dispute the proposition that a violation of the FAPA order would occur if she willfully attempted to contact the petitioner through a third party. Rather, defendant's argument centers on whether the record includes evidence of a willful third-party-contact attempt in this case. In that regard, defendant argues that she did not attempt to "contact" the petitioner through the bus driver, but simply gave the bus driver information that the driver himself decided to pass on to the petitioner.
Our first task, as framed by the parties' arguments, is to interpret the term "contact." We address defendant's argument that her conduct did not violate the terms of the restraining order by examining the text, context, and legislative history of the FAPA provision at issue. Trivitt , 247 Or. App. at 203-04, 268 P.3d 765 (citing State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009), and PGE v. Bureau of Labor and Industries , 317 Or. 606, 610, 859 P2d 1143 (1993) ).
We begin with the text of the FAPA provision at issue, ORS 107.718(1)(i), which provides, in relevant part, that "the respondent have no contact with the petitioner in person." As noted, the FAPA order in this case prohibited defendant from "[c]ontacting, or attempting to contact, [the] petitioner in person directly or through third parties." Here, both parties argue, and we agree, that the plain meaning of the verb "contact" is communication between people. See Webster's Third New Int'l Dictionary 490 (unabridged ed. 2002) ("to make connection with : get in communication with *** to talk or confer with"); State v. Crombie , 267 Or. App. 705, 706-10, 341 P.3d 841 (2014) (holding that the trial court did not err in concluding that the defendant willfully violated the "no-contact" provision of the FAPA order, and noting that the "defendant's proposed reading of the FAPA
*770 order *** would allow [the] defendant to easily subvert the intentions of the order, which are to prevent him from communicating with the victim" (emphasis added) ). Thus, the plain meaning of the verb "contact" is communication.
"In conducting our examination of the text in context, we consider prior judicial construction of the relevant term." State v. Tatarinov , 211 Or. App. 280, 285, 155 P.3d 67, rev. den. , 342 Or. 727, 160 P.3d 992 (2007). Defendant relies on Trivitt to argue that she "did not 'contact' [the] petitioner by communicating with the bus driver." In Trivitt , after the petitioner obtained a FAPA order, the defendant posted a wooden sign in the yard of the current girlfriend of the petitioner that stated that the petitioner had genital herpes. 247 Or. App. at 201, 268 P.3d 765. The state argued that the "defendant's conduct constituted an attempt to interfere with *** [the petitioner] through a third party, ORS 107.718(1)(e), and thus constituted a violation of the FAPA order." Id .[4] The defendant argued that, "because the FAPA order did not proscribe [the] defendant's conduct and [the] defendant had no intent to communicate with [the petitioner], the state failed to prove that [the] defendant willfully violated the restraining order." Id . at 202, 268 P.3d 765. The trial court found that the defendant had violated the FAPA order for interfering with the petitioner because the defendant had the specific purpose of sending the petitioner's current girlfriend a message about the petitioner. Id. We reversed, concluding that "the legislature intended 'interfere' to encompass a more physical interference than the conduct at issue," and " 'interfering' within the context of the statute simply could not encompass [the] defendant's conduct, which did not constitute more than offensive behavior." Id . at 205-06, 268 P.3d 765. We refused to construe " 'interfere' so broadly as to preclude a person from simply revealing personal *516 information about another person to a third party." Id .
Similarly, in State v. Balero , 287 Or. App. 678, 680, 402 P.3d 739 (2017), the defendant sent an email to the *771 petitioner's employer in which he "asserted that the petitioner had committed theft and fraud, and expressed concern that she might use her position to steal personal information from other employees." The "trial court concluded that [the] defendant's email constituted 'interference' for purposes of FAPA and found [the] defendant in contempt of court." Id . at 681, 402 P.3d 739. We noted that the "defendant did not have any direct *** verbal contact with [the] petitioner," and concluded that the defendant's conduct was indistinguishable from the defendant's conduct in Trivitt because the defendant merely "communicated negative personal information about [the] petitioner to a third party in an attempt to affect [the] petitioner's relationship with that third party." Id . at 684, 402 P.3d 739. Consequently, we reversed because "there was insufficient evidence to show that [the] defendant interfered or attempted to interfere with [the] petitioner within the meaning of the FAPA order." Id . at 685, 402 P.3d 739.
Defendant contends that, "[j]ust as the defendant in Trivitt did not 'interfere' with the petitioner by conveying information about the petitioner to a third party, defendant here did not 'contact' [the] petitioner by conveying information about [the] petitioner to a third party." The problem with that comparison is that Trivitt involved our examination of legislative history to interpret the legislature's definition of "interfere" under ORS 107.705(5) and ORS 107.718 (1)(e), 247 Or. App. at 204-05, 268 P.3d 765, whereas this case involves defendant's "contact" with the petitioner under ORS 107.718(1)(i). See State v. Keeney , 323 Or. 309, 316, 918 P.2d 419 (1996) (in construing the terms "untruthfulness" and "inaccuracy" as used in a statute, concluding that the legislature intended different meanings when it used different terms in the statute); ORS 174.010 ("where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all"). Defendant has not pointed to any legislative history to suggest that we should interpret the undefined term "contact" in ORS 107.718(1)(i) in the same way as the legislatively defined term "interfere" found in ORS 107.705(5) and ORS 107.718(1)(e). Moreover, unlike the defendants' conduct in Trivitt and Balero , here, defendant's conduct involved verbal contact with the petitioner through a third party. Thus, Trivitt and Balero provide little *772 guidance for our analysis of the meaning of "contact" under ORS 107.718(1)(i).
As noted, the plain meaning of the verb "contact" is communication between people. "Willfully," for purposes of contempt of court and determining whether defendant willfully violated the FAPA order under ORS 33.015(2), means "intentionally and with knowledge that [the act or omission] was forbidden conduct." State v. Nicholson , 282 Or. App. 51, 62, 383 P.3d 977 (2016) (brackets in original; internal quotation marks and citation omitted). With the plain meaning of "contact" in mind, we turn to the question of whether the state presented sufficient evidence to show that defendant intentionally communicated with the petitioner through a third party "with knowledge that it was forbidden conduct." Id .
Here, it is reasonable to infer that defendant intended to communicate to the petitioner that she wanted the petitioner off the bus-defendant simply used the bus driver as the means by which to convey her message to the petitioner because she knew that directly communicating with the petitioner was forbidden conduct. It is also reasonable to infer that defendant did not merely convey information about the petitioner to the bus driver because, immediately after defendant's conversation with the bus driver, the bus driver approached the petitioner "[a]t the request of [defendant]" and told him that "[defendant] wants you to get off the bus," and defendant waited to receive the petitioner's response. Defendant had no reason to speak with the bus driver and wait for the petitioner's response if she did not intend for the bus driver to communicate her message to the petitioner that she wanted the petitioner to get off the bus. Viewing that evidence in the light most favorable to the state, we conclude that the state presented sufficient *517 evidence from which a rational trier of fact could conclude that defendant willfully attempted to contact the petitioner through a third party. Thus, the trial court did not err in denying defendant's motion for judgment of acquittal.
Affirmed.

At trial, although defendant did not formally move for a judgment of acquittal, in her closing arguments, defendant argued that there was legally insufficient evidence that her conduct was a violation of the FAPA order. See State v. Gonzalez , 188 Or. App. 430, 431, 71 P.3d 573 (2003) (concluding that the defendant's closing argument that the state had not adduced legally sufficient evidence to establish the required culpable mental state "is the equivalent of a motion for judgment of acquittal").

The trial court also found defendant in contempt on Count 1. Defendant does not challenge that finding on appeal.

Defendant also argues, without analysis or elaboration, that the denial of her motion for judgment of acquittal violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We decline to address that undeveloped argument. See State v. McNeely , 330 Or. 457, 468, 8 P.3d 212, cert. den. , 531 US 1055, 121 S.Ct. 663, 148 L.Ed.2d 565 (2000) (declining to address an undeveloped claim of constitutional error).

ORS 107.718(1)(e) restrains the respondent to a FAPA order from "intimidating, molesting, interfering with or menacing the petitioner, or attempting to intimidate, molest, interfere with or menace the petitioner." ORS 107.705(5) defines "interfere" as "to interpose in a manner that would reasonably be expected to hinder or impede a person in the petitioner's situation."