Submitted March 23, affirmed June 8, 2022

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## KASSANDRA ANN WESTOM,
*Defendant-Appellant.*

### Columbia County Circuit Court
### 18CR21011; A173956

512 P3d 850

Defendant appeals from two judgments convicting her of criminally negligent homicide, ORS 163.145, and third-degree assault, ORS 163.165(2)(a). The trial court initially deferred sentencing on the negligent homicide charge and sentenced defendant to a three-year period of probation on the assault conviction. As a condition of probation, defendant was to have no contact with the victim's mother. The court subsequently found that defendant had violated the no-contact provision of probation. As a result, the court entered a judgment on the criminally negligent homicide charge, sentenced defendant to a three-year period of probation, and extended defendant's existing probationary term on the assault. On appeal, defendant argues that the trial court erred when it concluded that defendant had contacted victim's mother by knowingly remaining in her immediate presence. According to defendant, the term "contact" means to communicate verbally. *Held*: The trial court did not err. When the term "contact" is undefined, knowledge, proximity, and the duration of the contact can all bear on whether defendant violated a no-contact provision of probation. In this case, the trial court reasonably concluded that knowingly remaining in the presence of victim's mother constituted contact.

Affirmed.

Jenefer Stenzel Grant, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Ingrid A. MacFarlane, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Mooney, Presiding Judge, and Lagesen, Chief Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Affirmed.

## KISTLER, S. J.

In 2018, defendant entered into a plea agreement with the state. Defendant admitted that she had unlawfully caused the death of a young woman in "a motor vehicle crash" and agreed to plead guilty to criminally negligent homicide, third-degree assault, and contempt of court. In return, the state agreed to dismiss one count of reckless driving and make certain sentencing recommendations to the court. Consistently with the state's recommendations, the trial court deferred sentencing on the negligent homicide charge and sentenced defendant to a three-year period of probation on the assault and contempt convictions. One condition of defendant's probation is that she "shall have no contact with" the victim's mother.[1]

In 2019, the trial court found that defendant had violated the "no-contact" condition of her probation. Having made that finding, the trial court sentenced defendant to a three-year period of probation for criminally negligent homicide and entered a judgment of conviction on that charge. The court also extended defendant's existing probationary term on the assault conviction in a separate "judgment and probation order," with the result that her extended period of probation for assault mirrors the three-year period of probation on the homicide conviction. Defendant appeals from both judgments, arguing that the trial court erred in finding that she contacted the victim's mother in violation of her probation. We affirm the trial court's judgments.

We take the facts from the probation revocation hearing and state them consistently with the trial court's decision. Approximately nine months after defendant began her probation, the victim's mother and younger sister encountered defendant at a beach on the Columbia River. The victim's mother and sister were walking on a path from the parking lot to the beach when they passed within 10 feet of defendant, her boyfriend, and their baby. The victim's mother made eye contact with defendant, who smiled at her. That led the victim's mother to say, in a normal tone of voice,

---

[1] The conditions of probation are set out in the judgment of conviction for assault and incorporated by reference in the judgment of conviction for contempt. Neither judgment defines the phrase "shall have no contact with."

"Are you F—ing kidding me?" (Uppercase and deletions in original.) When the victim's sister asked her mother if she wanted to leave, the mother replied, "No. We are not adjusting our plans. We are going to walk down to the beach and spend our time together." The victim's mother and sister continued walking "way down to *** the sand. And set up [their] spot" close to the water, away from where defendant and her boyfriend were sitting.

Approximately 10 minutes later, defendant and her boyfriend moved "their stuff closer to the beach, to where [the victim's mother and sister] were[.]"[2] Then, "[defendant] and her baby and her boyfriend walked down to the water and played in front of [the victim's mother]" for approximately 15 to 20 minutes.[3] At that point, the victim's sister was also playing in the water, and she noticed defendant looking "a couple of times" at her and also at her mother. When the victim's mother began taking pictures of defendant with her cell phone, defendant packed up her things and left.

The trial court issued a show-cause order to determine whether defendant had violated the terms of her probation because she had had "contact with" the victim's mother. At the hearing on the show-cause order, defendant's lawyer raised two defenses. The primary defense was factual. Defense counsel argued that, because the victim's mother was dressed for the beach, she looked different than she usually did, with the result that defendant did not recognize her initially. Defendant's lawyer argued that defendant recognized the victim's mother only when she began taking pictures of her. At that point, her lawyer contended, defendant immediately gathered up her belongings and left.

---

[2] The victim's mother estimated that defendant and her boyfriend put their belongings down within 50 to 60 feet of where she and her daughter were sitting. Based on a photograph that the victim's mother took, which was admitted as an exhibit, the trial court could have found that defendant moved closer to the victim's mother than that. Defendant presented evidence to the contrary, but the trial court was not required to credit it.

[3] The trial court could have found from the photographs that were admitted as exhibits that the victim's mother was sitting close to the water and that, when defendant and her boyfriend were playing on the beach, they were close to her.

Defendant's lawyer also mentioned a legal issue in his opening statement and returned to it in his closing argument. He observed in his opening statement that the conditions of probation set out in the assault judgment did not define the term "contact."[4] At the end of his closing argument, defense counsel returned to the legal issue that he had mentioned in his opening statement. He said:

> "Again, I would point [out] to the Court that there really isn't a legal definition of what contact is. Other than [what] I would assume would be normal contact, if a person came up and said hey, how are you doing? And we don't have that here."

Given that record, the trial court found that defendant had violated the no-contact condition of her probation. It explained that, in light of the role that the victim's mother had played in defendant's life, it was neither "realistic" nor "plausible" to believe that defendant had not initially recognized the victim's mother. The court was careful to make clear that an inadvertent or unintentional contact would not violate the terms of defendant's probation. The court explained, however, that, after defendant recognized the victim's mother, it was incumbent on defendant to avoid further contact. Defendant did not do that. Rather, defendant and her boyfriend moved their belongings close to where the victim's mother was sitting and then spent a substantial amount of time playing on the beach directly in front of her.

The court explained to defendant that, once she recognized the victim's mother,

> "[t]here were some choices you could have made that are different from the choice of being directly in the line of sight between [the victim's mother] and—and the river.
>
> "Which is very clear from the photograph that you were right in her line of sight. So, that's why I believe that that was [a probation] violation."

Having found that defendant violated her probation, the court ruled that defendant had breached the plea

---

[4] Having made that observation, defense counsel did not offer a definition of contact in his opening statement, nor did he argue that any legal consequences followed from the absence of a definition.

agreement and sentenced her on the negligent homicide charge to a three-year period of probation. The court entered a judgment of conviction on that charge. The court did not revoke defendant's probation on the assault conviction. Rather, it extended her probation on that conviction so that it mirrored the three-year period of probation that the court imposed on the negligent homicide conviction. The court entered a separate document captioned "judgment and probation order" extending defendant's probation on the assault conviction.

On appeal, defendant does not pursue the factual issue that she raised below; that is, she appears to recognize that the trial court's factual findings effectively preclude her from arguing that she did not recognize the victim's mother initially. She focuses instead on the legal point that defense counsel raised at the probation revocation hearing. She notes, as her trial counsel did, that the condition of probation set out in the judgment of conviction for assault does not define the term "contact," and she argues that "contact" means to communicate verbally. It does not mean, she contends, knowingly remaining in the protected person's immediate presence. In making that argument, defendant does not contend that the term "contact" is unconstitutionally vague, either facially or as applied. Rather, she argues that its meaning is clear; it just means less than the trial court thought it did.

The state responds initially by raising two procedural defenses. It notes that the trial court's ruling that defendant violated her probation led to the entry of two related but separate judgments—(1) a judgment of conviction for negligent homicide entered pursuant to the plea agreement and (2) a "judgment and probation order" extending defendant's probation on her assault conviction. The state reasons that ORS 138.105(5) precludes us from deciding whether the first judgment resulted from an erroneous ruling and that the second judgment can be upheld on alternative grounds. It follows, the state contends, that we can affirm both judgments without deciding whether the trial court correctly found that defendant violated her probation. Finally, the state argues that the court's ruling is correct on the merits.

We begin with the state's argument that ORS 138.105(5) precludes us from going behind the plea agreement that led to the judgment of conviction for negligent homicide and determining whether the trial court erred in finding a probation violation. Our decision in *State v. Merrill*, 311 Or App 487, 492 P3d 722, *adh'd to as modified on recons*, 314 Or App 460, 495 P3d 219 (2021), supports the state's argument. *See also State v. Jones*, 311 Or App 685, 492 P3d 116 (2021) (same). Although defendant argues that *Merrill* was wrongly decided and notes that the Supreme Court has allowed review in *State v. Colgrove*, 308 Or App 441, 480 P3d 1026, *rev allowed*, 368 Or 347 (2021), to decide the issue, we follow our decision in *Merrill*.

That leaves the "judgment and probation order" extending defendant's probation on the assault conviction. As the state recognizes, no statute bars us from reaching the merits of the trial court's ruling that led to that judgment. The state argues, however, that we can affirm that judgment on an alternative ground. The state notes that the trial court had discretion to extend defendant's probation even if no probation violation occurred. *See* ORS 137.545(1)(a). That is so, the state argues, even if the trial court erred in concluding that defendant violated her probation. *See State v. Laizure*, 246 Or App 747, 268 P3d 680 (2011) (so holding).

The state is correct that, in *Laizure,* we found it unnecessary to decide whether the trial court erred in finding that the defendant had violated two conditions of his probation, which led to the court's extending the defendant's probation. 246 Or App at 753. We explained that the trial court had acted within its discretion in extending the defendant's probation because his actions, even if they did not violate the conditions of his probation, frustrated its purposes. *Id.* at 753-54. Implicit in our decision in *Laizure* is the proposition that any error in finding a probation violation played no role in the trial court's decision to extend probation.

We later made what was implicit in *Laizure* explicit in *State v. Keleman*, 296 Or App 184, 190, 437 P3d 1225 (2019). In *Keleman*, we declined to uphold a trial court order erroneously revoking the defendant's probation on the

theory that the court could have reached the same result on legitimate grounds. *Id.* We explained that "the court's mistaken belief that defendant's conduct violated the terms of his probation appears to have played a role in its decision to revoke." *Id.* That is, we could not say on appeal that the court's error was harmless.

We reach the same conclusion here. In this case, the trial court's decision to extend defendant's probation on the assault conviction flowed directly from its conclusion that defendant had violated a condition of her probation that she have no contact with the victim's mother. If the terms of defendant's probation did not prohibit her from remaining in the victim's mother's presence, as defendant argues, then it is difficult to see how defendant's actions—remaining on a beach near the victim's mother—would suggest that the purposes of probation were not being served. *Cf. Laizure*, 246 Or App at 752 (explaining that, in the absence of a probation violation, a trial court can exercise its discretion to extend a defendant's probation if the purposes of probation are not being served). At a minimum, we cannot say on appeal that the court would have independently exercised its discretion to extend defendant's probation if it had found no probation violation. It follows that we cannot uphold the judgment extending defendant's probation on the alternative ground that the state proposes and turn to the merits of the probation violation ruling.

As noted, one condition of defendant's probation is that "[d]efendant shall have no contact with" the victim's mother. As defendant observes, the judgment does not define the term "contact."[5] However, in comparable circumstances, we have looked to the dictionary definition of the noun "contact" to determine its meaning. *See Boyd v. Essin*, 170 Or App 509, 516, 12 P3d 1003 (2000), *rev den*, 331 Or 674 (2001) (looking to the dictionary definition of contact to determine whether the respondent's actions constituted a prohibited contact).

*Webster's* defines the noun "contact," in relevant part, as:

---

[5] As used in defendant's condition of probation, "contact" is a noun.

> "**2b:** a condition or an instance of meeting, connecting, or communicating <ordinary men were made to feel a direct *contact* with their God –H. S. Canby> <keep in *contact* with the other members> <neither party had made any *contact* with the other> <made *contact* with the enemy>."

*Webster's Third New Int'l Dictionary* 490 (unabridged ed 2003). To be sure, "contact," used as a noun, includes "an instance of * * * communicating." *Id.* But that is not its only meaning. *Id.* Used as a noun, "contact" also means "a condition or an instance of meeting [or] connecting." *Id.* To paraphrase the illustration in *Webster's*, an army may "ma[k]e contact with the enemy" by coming into the enemy's visual presence. *See id.* No words need be exchanged for a contact to occur.[6]

We explained in *Boyd* that the dictionary "establishes that, at its core, contact [used as a noun] involves a direct communication or a meeting," although "contact" can, in context, have a broader meaning. 170 Or App at 516 (identifying the ordinary understanding of that term and then interpreting it, in context, more broadly).[7] In this case, the trial court found that a prohibited nonverbal contact occurred when defendant knowingly chose to move into and remain in the victim's mother's immediate visual presence. Specifically, after recognizing the victim's mother, defendant moved her belongings close to where the mother and her daughter were sitting and then played on the beach directly in front of the mother for 15 to 20 minutes.

---

[6] The phrase used in defendant's condition of probation, "shall have no contact with," parallels the phrase in *Webster's* illustration of that term, "ma[k]e contact with."

[7] In *Boyd*, we sought to determine whether a nonverbal act, which the petitioner learned about after the fact—the respondent's repeatedly watching the petitioner's home with binoculars—constituted a prohibited contact for the purposes of the stalking statutes. 170 Or App at 515. Those statutes provide that "'contact' includes but is not limited to" a series of examples. *Id.* (quoting the statutory definition of "contact"). The specific contact at issue in *Boyd* did not come within one of the listed examples, *id.* at 515-16, and we looked to the dictionary definition of contact, used as a noun, as well as drawing inferences from the listed examples, in concluding that watching the petitioner's home with binoculars "show[ed] an unwanted relationship or association" and thus counted as a prohibited contact once the petitioner learned about the respondent's actions. *Id.* at 517.

Defendant, however, argues that "contact" has a more limited meaning. Relying on our decision in *State v. Harrison*, 290 Or App 766, 417 P3d 513 (2018), she contends that the no-contact condition of her probation prohibits only verbal communication. Defendant's argument is counterintuitive. If defendant were correct, no contact would have occurred if defendant had approached the victim's mother at the beach and physically grabbed her. Under defendant's interpretation of the no-contact condition, defendant would not have made "contact" with the victim's mother as long as she did not say anything to her.

One difficulty with defendant's argument (and her reliance on *Harrison*) is that we interpreted the transitive verb "contact" in *Harrison*; we did not interpret that term used as a noun. *See Harrison*, 290 Or App at 769-70 (noting that we were discussing the meaning of "the verb 'contact'"); *id.* at 767 (setting out the prohibition at issue in that case). As we recognized in *Harrison*, "contact," used as a transitive verb, has a limited set of meanings; one person ordinarily "contacts" another by communicating with them in some way. 290 Or App at 769; *Webster's* at 490.[8] When used as a noun, contact has a wider range of meanings. *See Boyd*, 170 Or App at 516; *Webster's* at 490.[9] Used as a noun, "contact" means, among other things, "a condition or an instance of meeting [or] connecting." *Webster's* at 490. Defendant errs in taking the definition of one part of speech in *Harrison* and transposing it onto a different part of speech in this case.

Defendant's reliance on *Harrison* is misplaced for another reason. She relies on a statement from *Harrison* to resolve an issue that that case neither presented nor decided. As noted above, the parties in *Harrison* agreed, as

---

[8] The dictionary defines contact, used as a transitive verb, as "to bring into contact **:** enter or be in contact with[.]" It then lists three subsenses of that word: "**a:** to press against ***"; "**b:** to make connection with **:** get in communication with ***"; and "**c:** to talk or confer with." *Webster's* at 490. Even that definition, however, is broader than the definition defendant proposes; it would include "press[ing] against" another as well as "talk[ing] or confer[ring] with" them.

[9] The dictionary lists five different senses of contact, used as a noun, several of which have multiple subsenses. *See Webster's* at 17a (explaining how *Webster's* indicates that a word has more than one sense or subsense). As noted above, the most relevant sense of contact, used as a noun, is "a condition or instance of meeting, connecting, or communicating." *Webster's* at 490.

did we, that "the plain meaning of the verb 'contact' is communication between people." 290 Or App at 769. We did not, however, purport to decide whether that was the only meaning of "contact," even when used as a transitive verb. Rather, the question that we decided in *Harrison* was whether the defendant "contacted" the petitioner in that case when she told another person information that she either intended or understood that the person would communicate to the petitioner. *Id.* at 772. Defendant errs in reading *Harrison* more broadly.

We accordingly agree with the trial court that defendant's actions violated the condition of her probation that she "have no contact" with the victim's mother. Having reached that conclusion, we note that, when the term "contact" is undefined, the question whether a person violated a no-contact prohibition by being in the protected person's presence can present close questions at the margin. Knowledge, proximity, and the duration of the contact can all bear on the issue. This, however, is not a close case. The trial court reasonably determined that defendant's knowing decision to remain in the victim's mother's immediate presence while she and her boyfriend played directly in front of the mother for 15 to 20 minutes fell within the center of the prohibition. We also note that the only issue that defendant has raised on appeal is what the no-contact prohibition means. Defendant has not argued that the prohibition, left undefined, is unconstitutionally vague, either facially or as applied.

Affirmed.